IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| MARY K. WALES, | ) |
| Plaintiff; | ) |
| vs. | ) 5:12-cv-0320-LSC |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

MEMORANDUM OPINION

## I.  Introduction

The plaintiff, Mary K. Wales, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Wales timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Wales was thirty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, has an eleventh grade education, a GED, and majored in Computer Information Systems during one year of college. (Tr. at 46, 50.) Her past

work experience includes employment as a receptionist, cashier, payroll clerk, waitress, nurse's aide, and assembly line worker. (*Id.* at 52-56.) Ms. Wales originally claimed that she became disabled on January 24, 2004, due to arthritis, fibromyalgia, back pain, migraines, and depression, but at her administrative hearing she amended her alleged onset date to April 1, 2007. (*Id.* at 25, 111-12, 141.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether

the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id*. If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id*. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id*.

Applying the sequential evaluation process, the ALJ found that Ms. Wales meets the nondisability requirements for a period of disability and DIB and was insured through June 30, 2008. (Tr. at 22.) He further determined that Ms. Wales has

not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's migraine headaches, fibromyalgia, arthritis, obesity, and degenerative disk disease of the lumbar spine are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 24.) The ALJ did not find Ms. Wales's allegations to be totally credible, and he determined that she has the following residual functional capacity: "light exertional work with a sit-stand option; lifting/carrying five to ten pounds on right and ten pounds on the left; sitting thirty to forty-five minutes; standing thirty minutes; and walking less than one quarter of a mile during an eight hour workday." (*Id.* at 24-26.)

     According to the ALJ, Ms. Wales is able to perform her past relevant work as a receptionist. (*Id.* at 26.) Using the testimony of a vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT"), the ALJ found that Plaintiff can perform the job of receptionist, both as she performed it and as it is generally performed in the national economy. (*Id.* at 26, 56.) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 1, 2007, through the date of this decision." (*Id.* at 27.)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for

"despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Ms. Wales alleges that the ALJ's decision should be reversed and remanded because the ALJ lacked "good cause" to discredit her treating physicians' opinions concerning the limiting effects of her impairments—particularly her migraine headaches—on her ability to maintain substantial gainful work activity. (Doc. 8 at 8-13.)

Plaintiff contends that the ALJ did not give proper weight to her treating neurologist's and nurse practitioner's opinions. (*Id.*) A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the

examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

    The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences

thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

The ALJ showed "good cause" for discounting Dr. Jeffrey Harris' and Certified Registered Nurse Carmalita Kelly's[1] opinions from 2008 through 2010, based on: (1) the lack of objective medical evidence to support their opinions; (2) internal inconsistencies within the opinions; (3) inconsistency with evidence of work by Plaintiff; and (4) inconsistency with evidence that Plaintiff was not taking her prescriptions. (Tr. at 25-26.)

Dr. Harris and Nurse Kelly completed a clinical assessment of Plaintiff's pain on August 15, 2008. (*Id.* at 371-73.) Rather than base his assessment on objective medical evidence, Dr. Harris based his assessment on "the *nature* of Plaintiff's impairment, the degree to which pain is *typically* of major concern in that impairment, and the extent to which the *patient expresses* the presence of pain and requests medications for its relief." (*Id.* at 371.) (emphasis added). Dr. Harris determined that

---

[1] The Commissioner is likely correct that Nurse Kelly's opinion cannot be given the weight of a treating physician. *See* 20 C.F.R. §§ 404.1502, 416.902, 404.1513(a), (d)(1), 404.1527(a)(2), 416.913(a), (d)(1), 416.927(a)(2). However, this court declines to address that question because its determination that there was "good cause" to discredit Dr. Harris' opinion would apply equally to Nurse Kelly's opinions. Therefore, for the purposes of this appeal, this court treats Nurse Kelly's opinions as deserving equivalent weight to Dr. Harris' opinions.

Plaintiff's symptoms could cause distractions or result in failure to complete job tasks during a typical eight-hour workday and that Plaintiff's "pain is present to such an extent as to be distracting to adequate performance of daily work activities." (*Id.* at 371, 373.) Dr. Harris' further opined that physical activity will cause "some increase" in the level of pain, but will not "prevent adequate functioning" in daily work activities. (*Id.* at 371.)

On the same day, Nurse Kelly completed a headaches residual functional capacity questionnaire, in which she indicated Plaintiff's headaches occurred daily, could last from four hours to days, and were moderate to severe in nature. (*Id.* at 374.) Nurse Kelly noted that anxiety/tension, migraines, or sinusitis could reasonably be expected to explain Plaintiff's headaches; however, she also indicated Plaintiff was a malingerer, marked Plaintiff's prognosis as "good"; and indicated Plaintiff was capable of low stress jobs. (*Id.* at 376-77.) Nurse Kelly described Plaintiff's need for breaks and potential absenteeism as "unpredictable depend[ing] on [the] severity of migraine[s]." (*Id.* at 377.) Nurse Kelly's findings were based on her "observation and treatment" of Plaintiff, rather than laboratory findings or other objective medical evidence. (*Id.* at 373.)

In a later clinical assessment of pain, dated September, 7, 2009, Dr. Harris changed his previous assessment of Plaintiff to indicate her pain was "irretractably and virtually incapacitating" and greatly increased by physical activity as to cause distraction from or total abandonment of a task. (Tr. at 380.) An additional clinical assessment of pain, completed on January 2, 2010, indicated physical activity could increase Plaintiff's pain "to such an extent that bed rest and/or medication [was] necessary." (*Id.* at 384.) At that time, Dr. Harris indicated Plaintiff could be expected to miss twenty-five to thirty days of work per year because of her underlying medical condition. (*Id.* at 386.) Like Dr. Harris' August 15, 2008 assessment, these assessments were based on subjective factors rather than objective medical evidence. (*Id.* at 380, 386.)

The ALJ had good cause to discredit Dr. Harris' and Nurse Kelly's opinions based on their lack of support from objective medical evidence. Indeed, the ALJ correctly noted that both Dr. Harris' and Nurse Kelley's opinions were based entirely on Plaintiff's subjective description of symptoms, and not on any objective medical evidence found in the record. (Tr. at 26, 371, 380, 386.) The fact that a medical opinion is not based on objective evidence may provide good cause for discounting that opinion. *See, e.g.* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more . . .

relevant evidence to support an opinion, *particularly* medical signs and laboratory findings, the more weight [the Commissioner] will give that opinion.") (emphasis added); *Johns v. Bowen*, 821 F.2d 551 (11th Cir. 1987) (holding that good cause existed to discount a treating physician's opinion when the treating physician's statements were conclusory and unsupported by objective medical findings); *Edwards*, 937 F.2d at 583 ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.") (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)). Because Dr. Harris' and Nurse Kelly's opinions were not supported by objective medical evidence, the ALJ had good cause to discredit them.

A second basis for discrediting Dr. Harris' August 15, 2008 opinion is that it is internally inconsistent. (*Id.* at 371.) As the ALJ noted, Dr. Harris' opinion that Plaintiff's pain would distract from adequate performance of daily work activities is inconsistent with his statement that an increase in pain would not prevent adequate functioning in daily work activities. (Tr. at 26, 371.) 20 C.F.R. 404.1527(c)(2), 416.927(c)(2); *Crawford*, 363 F.3d at 1159-60 (holding that the ALJ had good cause to discredit treating physician's testimony based in part on inconsistency between his

opinion and treating notes). Therefore, the ALJ had good cause to discount these opinions.

Plaintiff's work activities also support the ALJ's decision to give little weight to Dr. Harris' opinion that Plaintiff would require bed rest or necessitate medication. At both the hearing and multiple emergency room vists, Plaintiff acknowledged applying for work after her alleged disability onset date and that she was employed as a receptionist after her alleged disability on-set date. (Tr. at 51-52, 250, 256, 261, 267, 275, 281, 411, 439, 440, 450, 460, 474, 486.) Evidence that Plaintiff is maintaining employment after her alleged disability onset date conflicts with Dr. Harris' opinion that physical activity would require bed rest. (*Id.* at 384.) As the ALJ noted, Plaintiff's efforts to maintain employment are inconsistent with Dr. Harris' opinion that Plaintiff would require bed rest. (*Id.* at 26, 384.) These inconsistencies are good cause to discount Dr. Harris' opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Phillips*, 357 F.3d at 1241 (holding that the ALJ showed good cause to give little weight to a treating physician's opinion that was inconsistent with Plaintiff's daily activities).

Finally, Plaintiff acknowledged at multiple hospital visits that she fails to take her medications. (Tr. at 253, 258, 265, 272, 278.) Dr. Harris' January 2, 2010 opinion indicated that physical activity could increase Plaintiff's pain and necessitate medication. (*Id*. at 384.) As the ALJ noted, Plaintiff's failure to take her medications is inconsistent with Dr. Harris' opinion that medication would be necessary for Plaintiff to cope with the severe pain due from increased physical activity. (Tr. at 26.) *See Harwell v. Heckler*, 735 F.2d 1292, 1292 (11th Cir. 1984) (stating that lack of regular use of potent pain medication is substantial evidence supporting the ALJ's determination that claimant was not disabled).

For these reasons, the Court is of the opinion that the ALJ had good cause to give little weight to Dr. Harris' and Nurse Kelly's opinions of Plaintiff's condition. *See Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.

## IV.  Conclusion

Upon review of the administrative record, and considering all of Ms. Wale's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this <u>25th</u> day of <u>July 2013</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]